IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARK W. GLASMIRE | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-748-Y |
| | § | |
| PUBLIC STORAGE, et al. | § | |

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment (doc. 68) filed by defendants Public Storage ("PS") and PSCC, Inc. ("PSCC") (collectively, "the Public Storage entities"), and Shurgard Storage Centers, LLC ("Shurgard"). After review, the Court will grant the motion as to Shurgard and deny it as to the Public Storage entities.

I.   Background

This is an age-discrimination case. Plaintiff Mark W. Glasmire alleges that the Public Storage entities terminated his employment on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA") and Texas Commission on Human Rights Act ("TCHRA"). The Public Storage entities, in defense, insist that PSCC was the only entity that actually employed Glasmire and that PSCC lawfully terminated Glasmire's employment on the ground of poor performance.

Glasmire's relationship with the Public Storage entities began in 2006 when PS acquired Shurgard by merger. (Defs.' Summ. J. App. 44, 342, 382-83.) At the time, Glasmire was 52 years old and working for Shurgard as a regional construction manager. (*Id.* at

45.) The Public Storage entities, after interviewing Glasmire, hired him to stay on and continue working as a construction manager.[1] (*Id.* at 41-42.)

In connection with his employment, Glasmire received a partial-year performance evaluation for the year 2006 and a full-year evaluation for each of the years 2007-2010. (*Id.* at 261-62, 268-284.) On each of those evaluations, Glasmire was given a "meets expectations" rating and apprised of a number of areas for improvement.[2] (*Id.*) Glasmire's 2008 evaluation, for example, indicated that Glasmire needed to "improve on identifying potential issues; having persistent and effective follow through to resolve outstanding items; and having unresolved items at the end of a project." (*Id.* at 277.) The 2008 evaluation also apprised Glasmire that he needed to continue improving "in his use of Expedition," the project-management software utilized by the Public Storage entities. (*Id.*)

In February 2011, Glasmire received a disciplinary-action summary purporting to identify certain areas in which Glasmire's performance had remained deficient. (*Id.* at 286-88.) Glasmire signed the form but noted that he "respectfully disagree[d] with some of the issues as specifically stated" and that he was signing

---

[1] As previously noted, Defendants argue that only PSSC employed Glasmire. The Court will address this argument below.

[2] David Marzocchi was Glasmire's supervisor for the 2006 partial-year evaluation and the 2007 and 2008 full-year evaluations. (Defs.' Summ. J. App. 261, 268, 272.) Marzocchi and Frank Caccuro were both supervisors for the 2009 evaluation. (*Id.* at 276.) Caccuro was Glasmire's supervisor for the 2010 evaluation. (*Id.* at 281.)

the form "in an attempt to move past this." (Pl.'s Resp. App. 256-57.)  Later that month, Glasmire's then-supervisor, Frank Caccuro, briefly went over the disciplinary-action summary with Glasmire but, according to Glasmire, "Caccuro said specifically that the [summary] was just a formality and that there were no deadlines." (*Id.* at 43-44 (emphasis removed).)  Glasmire characterizes the disciplinary-action summary as a "bogus and inaccurate" document conjured up by Caccuro to "create a record." (Pl.'s Am. Resp. Br. 27, 30.)

In any event, upon the recommendation of Caccuro and one of Glasmire's previous supervisors, David Marzocchi, the Public Storage entities terminated Glasmire's employment in April 2011 on the stated ground of poor performance. (Defs.' Summ. J. App. 158, 317, 360-61.)  According to the Public Storage entities, Glasmire had failed to correct the deficiencies identified in his performance evaluations.  The Public Storage entities later hired fifty-year-old Daniel Bobrowicz to replace Glasmire. (*Id.* at 458.)

Against this backdrop, Glasmire filed the instant suit against Defendants (doc. 1) asserting claims for age-discrimination under the ADEA and TCHRA.[3]  Defendants now move for summary judgment on all of Glasmire's claims.[4]

---

[3] Glasmire alleges in his amended complaint that he exhausted his administrative remedies, and Defendants do not dispute this. (Pl.'s Am. Compl. (doc. 12) 10, ¶¶ 35-36.)

[4] The discovery period in this case was highly adversarial. Collectively, the parties filed six discovery motions (docs. 41, 46, 48, 71, 73, 105), including a motion to enforce a prior discovery order, and sought sanctions in five of the motions.

II. Legal Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is **required** to consider only the cited materials, it **may** consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v.*

*Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

III. Discussion

    A.   Whether Defendants Constitute a Single Enterprise

Defendants, citing the affidavit of human-resources director Sybil Enriquez, contend that only PSCC had an employment relationship with Glasmire and that, consequently, Glasmire's claims against PS and Shurgard should be dismissed. (Defs.' Summ. J. App. 457.) Under the ADEA, a company "cannot be held liable for discriminatory employment actions unless it qualifies as an 'employer' under the statute." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997) (citing 29 U.S.C.A. § 623 (West 2013)).[5] Courts "construe[] the term 'employer' broadly to include

---

[5] "The ADEA defines an employer only as 'a person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.'" *Lusk*, 129 F.3d at 777 (citing 29 U.S.C.A. § 630(b)).

superficially distinct entities that are sufficiently interrelated to constitute a single, integrated enterprise." *Id.* (citations omitted). Defendants do not dispute that PSSC qualifies as Glasmire's employer under the ADEA--only that PS and Shurgard are distinct entities that themselves did not employ Glasmire.

The question, then, is whether PSSC, PS, and Shurgard were merely superficially distinct entities, such that they constituted a single enterprise for purposes of Glasmire's employment and termination. "Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983) (citations omitted). "This analysis," however, "ultimately focuses on the question whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation, and all four factors are examined only as they bear on this precise issue." *Lusk*, 129 F.3d at 777 (citations omitted). Consequently, "the mere existence of common management and ownership [is] not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Id.* (citations omitted).

Beginning with the relationship between PS and PSSC, the Court concludes that there are disputes of material fact concerning whether those two entities functioned as a single enterprise in this case. First, as Glasmire points out, the employee handbook

that was operative during his employment identifies only "Public Storage" as the relevant employer. (Defs.' Summ. J. App. 456, 462, 467.) It does not differentiate between PS and PSSC. (*Id.*) Second, Glasmire's offer letter contains "Public Storage" letterhead and is signed by PS's President of Real Estate, David Doll. (*Id.* at 170-72, 336-37.) There is no mention of PSSC in the letter. (*Id.*) Third, Glasmire's performance evaluations from 2006 through 2010 contain the "Public Storage" logo at the top of each page, suggesting that PS is the applicable employer. (*Id.* at 261-62, 268-284.)

While none of these things is, by itself, sufficient to conclusively establish that PS and PSSC are an integrated enterprise, they are collectively adequate to create a dispute of fact on that issue.[6] Taken together, in other words, this evidence suggests that PS and PSSC shared "centralized control of labor relations," *Trevino*, 701 F.2d at 404, and it reasonably permits the inference that PS "was a final decision-maker in connection with the employment matters underlying the litigation." *Lusk*, 129 F.3d at 777.

By contrast, there is no evidence suggesting that Shurgard had

---

[6] Defendants complain that Glasmire did not plead a "single-enterprise" argument in his complaint and contend that, as a result, he has waived his opportunity to do so. But "[c]omplaints need not anticipate defenses and attempt to defeat them." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). The "Public Storage" name and logo has appeared on several of Glasmire's employer-originated documents. In view of this and the other instances of interrelation described above, it would not have been unreasonable for Glasmire to fail to contemplate that Defendants might challenge his identification of PS as one of his employers. In any event, Defendants are not unduly prejudiced by Glasmire's raising a single-enterprise argument at this time. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

any employment relationship with Glasmire during the relevant period. Nor is there any evidence indicating that Shurgard has had any meaningful relationship with PS or PSSC since the 2006 merger. Glasmire's claims against Shurgard, then, fail as a matter of law.

B.  Analysis Under the ADEA and TCHRA

"Where, as here, a plaintiff relies on circumstantial evidence, Texas courts apply the familiar *McDonnell Douglas* burden-shifting framework to age-discrimination claims." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012)). Under this framework, "a plaintiff is entitled to a 'presumption of discrimination' if he can meet the minimal initial burden' of establishing a prima facie case." *Id.* (quoting *Mission Consol.*, 372 S.W.3d at 633-34).

If the plaintiff establishes a *prima-facie* case, then "the 'burden shifts to the employer to show a legitimate, non[discriminatory] reason for the adverse employment action.'" *Id.* (quoting *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011)). Should the employer meet this burden, "the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination." *Id.* (citations omitted).

As the United States Court of Appeals for the Fifth Circuit recently observed, however, "the TCHRA and the ADEA involve a different causation inquiry at the third stage of the *McDonnell Douglas* analysis." *Id.* at 440. That is, "[u]nder the ADEA, a plaintiff must prove that age was the 'but for' cause of the

challenged adverse employment action," whereas, "[u]nder the TCHRA, . . . a plaintiff need only show that age was a 'motivating factor' in the defendant's decision." *Id.* (citations omitted).

### 1. Step One: *Prima-Facie* Case

To establish a *prima-facie* case of age discrimination, Glasmire "must show [he] was discharged; qualified for the position; within the protected age group at the time of the discharge; and either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of [his] age." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). His burden here is not an "onerous" one. *See Reed*, 701 F.3d at 439.

It is undisputed that Glasmire was discharged while within the protected age group and that he was replaced by someone younger. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-13 (1996) (holding that an inference of age discrimination may be drawn where the plaintiff was replaced by someone significantly younger, even though the replacement was also within the protected class). Defendants contend, nonetheless, that Glasmire's replacement was not sufficiently younger than Glasmire to permit an inference of discrimination.

The United States Supreme Court has explained that "[i]n the age-discrimination context, . . . an inference [of discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id*. at 313. What constitutes a

9

significant age difference, however, has not been made the subject of a bright-line rule in the Fifth Circuit as it has in others. *See, e.g.*, *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) ("[W]e hold that, in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant.").

Nevertheless, in the Court's view, the five-plus years' age difference between Glasmire and Bobrowicz is sufficient here to support an inference of discrimination, at least for purposes of Glasmire's *prima-facie* case. *See Whittington v. Nordam Group, Inc.*, 429 F.3d 986, 996 (10th Cir. 2005) ("In our view, a definitive five-year rule is unjustified. . . . We decline to set rigid guidelines and will leave to the jury the evaluation of the evidence, subject as always to the oversight of the district court to refuse to permit unreasonable findings."); *see also Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) (determining, pre-*O'Connor*, that five-year age difference, although a "close question," was sufficient to support the district court's assumption that a *prima-facie* case has been established).[7]

Defendants also contend that "given [Glasmire's] poor performance, he cannot show that he was qualified for the

---

[7] An ADEA plaintiff, in addition to demonstrating that he was replaced by a younger invidual, may satisfy the fourth prong of his *prima-facie* case by demonstrating that he was "otherwise discharged because of [his] age." *Phillips*, 658 F.3d at 455. On this basis, even assuming that the age difference between Glasmire and Bobrowicz is insignificant as a matter of law, Glasmire's *prima-facie* case remains in tact for the reasons discussed below in connection with the Court's analysis at step three of the *McDonnell Douglas* framework.

10

[c]onstruction [m]anager position." (Defs.' Summ. J. Br. 18.) The Court disagrees. Performance and qualification are not identical concepts. The former describes what one has accomplished while the latter describes what one has the capability of accomplishing. *See* Webster's New Collegiate Dictionary 873, 963 (9th ed. 1991) (defining performance as "something accomplished" and qualification as "a quality or skill that fits a person (as for an office)"). Moreover, to the degree that the two concepts overlap, "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy." *Bienkowski*, 851 F.2d at 1505.

More to the point, the summary-judgment record indicates that Glasmire had over thirty years of experience in the construction industry at the time of his termination, including some thirteen years in the storage context. (Defs.' Summ. J. App. 43, 45, 126-27, 422.) And there is no evidence showing that Glasmire lost a license or otherwise became less qualified over the course of his employment. *See Bienkowski*, 851 F.2d at 1506 ("[A] plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action."). Accordingly, the Court concludes that Glasmire has established a *prima-facie* case of age discrimination under the ADEA and TCHRA.

2. Step Two: Legitimate, Nondiscriminatory Reason

Defendants proffer that Glasmire was terminated for his poor

11

performance. In support, Defendants point to Glasmire's annual performance reviews, which identify various purported deficiencies and areas of needed improvement, including his failure to see projects to completion and lack of proficiency using the project-management software. (Defs.' Summ. J. App. at 261-62, 268-284.) Expounding on this evidence, Defendants contend that Glasmire failed to remedy the performance deficiencies, even after receiving his disciplinary-action summary, and that his employment was thus properly terminated for poor performance.

In the Court's view, this is sufficient to meet Defendants' burden of articulating a legitimate, nondiscriminatory reason for terminating Glasmire's employment. *See Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) ("The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." (citation omitted)).

3. Step Three: But-For Cause or a Motivating Factor

As noted above, for an ADEA plaintiff to avoid summary judgment at step three of the *McDonnell Douglas* framework, he must create a dispute of material fact as to whether his age was the but-for cause of his termination. *See Reed*, 701 F.3d at 440. Glasmire has done this. First, Glasmire has undermined the veracity of Defendants' stated reason for firing him by pointing out that he received a rating of "meets expectations" on all of his performance reviews and that he received a discretionary bonus every full year of his employment. (Defs.' Summ. J. App. 261-62, 268-284; Defs.' Sealed Attachment (doc. 76) 1.)

Second, Glasmire has presented evidence that, if construed in his favor, reasonably supports an inference that younger construction managers received more favorable treatment than Glasmire despite their receiving similar performance reviews. For example, in 2010, a construction manager in his late thirties received a "meets expectations" rating and was informed that he needed to improve at, among other things, "following through on action items" and "[u]nderstanding and managing procedural requirements." (Pl.'s Resp. App. 214)   He was also informed that his failure to effectively implement plans caused Caccuro "to work harder in reviewing his work." (*Id.*)   Nevertheless, the younger manager received a significantly higher discretionary bonus for the year than Glasmire did, and he has not received a disciplinary-action summary or been terminated for poor performance. (*Id.* at 83, 84; Defs.' Sealed Attachment 1.)

Third, Glasmire has testified that his supervisor, Cacurro, made numerous age-related comments to him over the course of his employment with the Public Storage entities. Glasmire testified, for example, that Caccuro frequently called him "old school" and used phrases like "when I am your age."   (Pl.'s Resp. App. 48, 154.)  Glasmire also testified that Caccuro often criticized his use of a "daytimer" planner, as opposed to a smartphone, and his practice of handwriting notes instead of taking them electronically.  (*Id.* at 154, 149.)

These comments, construed in a light favorable to Glasmire's case, are arguably derogatory.  And when considered alongside the

13

aforementioned evidence of pretext and disparate treatment, they are sufficient to at least create a dispute of material fact as to whether age was a but-for cause behind Glasmire's termination in violation of the ADEA.[8]  For these same reasons, Glasmire has likewise created a dispute of fact as to whether his age was a motivating factor behind his termination in violation of the TCHRA.[9]

    C.   Spoliation of Evidence

On a slightly different note, Glasmire contends that Defendants spoiled critical evidence in this case and that, consequently, he is entitled to a spoliation inference.  "Under the spoliation doctrine, a jury may draw an adverse inference 'that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party.'"  *Whitt v. Stephens Cnty.*, 529 F.3d 278, 284 (5th Cir. 2008) (quoting *Russell v. Univ. of Tex.*, 234 F. App'x 195, 207 (5th Cir. 2007)).  Moreover, "in borderline cases, an inference of

---

[8]    Defendants contend that Caccuro's alleged comments are merely stray remarks, which "do not prove age discrimination." (Defs.' Summ. J. Br. 22.)  It is true that stray remarks, "standing alone, are insufficient to defeat summary judgment," as they do not constitute direct evidence of discrimination.  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (citation omitted).  But "so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent."  *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) (citation omitted).  Here, the Court is not relying on Caccuro's remarks as direct evidence of discrimination; rather, the Court is merely considering those remarks in tandem with Glasmire's other evidence of disparate treatment and pretext as circumstantial evidence of discriminatory intent.

[9]    Glasmire contends that Caccuro was the sole decision-maker behind his termination.  The Court need not reach this question.  Defendants have not moved for summary judgment on the ground that Caccuro was not a decision-maker. Indeed, Defendants seem to acknowledge that Caccuro was a decision-maker, though their position is that he was not the sole decision-maker.

14

spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment." *See id.* at 285 (citation omitted) (internal quotation marks omitted).

Invoking this doctrine, Glasmire alleges that Defendants "allowed critical documents to be destroyed/deleted and have played games with Glasmire and withheld documents." (Pl.'s Am. Resp. Br. 3.) During the discovery period, Glasmire advanced a similar argument and filed a motion to compel Defendants to produce the desired critical documents (doc. 73). The Court referred the motion to United States Magistrate Judge Jeffrey L. Cureton (doc. 84), who, after a hearing, granted Glasmire's motion in part but did not find that Defendants had acted in bad faith (doc. 101).

Similarly, this Court, after reviewing the matter, concludes that Glasmire has not introduced probative evidence of spoliation. That Defendants may have been less than fully cooperative does not allow a spoliation inference; rather, to support such an inference, a showing of bad faith is required. *See Whitt*, 529 F.3d at 284. And in the Court's view, Glasmire has not made such a showing.

IV.  Conclusion

Therefore, based on the foregoing, the Court concludes that Glasmire has created a dispute of material fact sufficient to avoid summary judgment on his claims against PS and PSSC, but that he has failed to create a dispute of material fact on his claims against Shurgard. The Court further concludes that Glasmire has not shown

the requisite bad faith on the part of Defendants or their counsel to support an inference of spoliation.

Accordingly, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Glasmire's claims against Shurgard are DISMISSED WITH PREJUDICE.

SIGNED May 7, 2013.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE